**KATES, Admr., etc., Plaintiff-Appellee, v. INDUSTRIAL COMMISSION, Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 20070. Decided October 15, 1945.

A. B. Cook, Cleveland, and S. S. Kates, Cleveland, for plaintiff-appellee.

H. S. Jenkins, Atty. Genl., Columbus, and C. H. Bernard, Cleveland, for defendant-appellant.

## OPINION

By SKEEL, P. J.

This case comes to this court on questions of law. The plaintiff administrator appealed to common pleas court from a decision, upon rehearing, of The Industrial Commission's finding that "proof on file does not show that the decedent's death was due to an injury sustained in the course of and arising out of employment." The common pleas court reversed the Commission and gave judgment to the plaintiff.

The decedent, Frank Yaro Cherney, was an employee of The J. H. Harper Company. The said company was a contributor to the fund administered by the Industrial Commission as provided by law.

On the day that Frank Yaro Cherney met with the accident that caused his death, he had been working for his employer at The Otis Steel Company (Jones-Laughlin Steel Company) 3341 Jennings Road, Cleveland, Ohio. The J. L. Harper Company had a garage located at 3625 Prospect Avenue in Cleveland where it kept a truck and other equipment used in its business. The deceased was a helper for Jesse Lee Kaiser, employed "in conection with the drilling operations of said company" and on the day in question and for some time prior thereto, was drilling holes for blasting purposes at the Jennings Road property of The Otis Steel Company.

The employees of The J. L. Harper Company working at Otis Steel Company would report at the garage "for the start of the day's work" and from this point would drive or be driven to the steel plant in the truck of the employer and when the day's work was over they would be returned to the garage in the same manner.

The route which was generally followed in going from the garage to the steel plant and back, was over Prospect

Avenue to East 30th Street; from there to Broadway; then over Broadway to Independence Road; then over Independence Road to the Jefferson Bridge and then over West 3rd Street to the steel plant.

On the evening in question, the deceased and Mr. Kaiser, after the day's work was finished, left the Otis Steel Company at about 4:30 P. M. Instead of going to the garage in the usual way Mr. Kaiser directed the deceased to drive him to 700 Prospect Avenue. Upon arriving at this point Mr. Kaiser got out of the truck and directed the deceased to drive the truck back to the garage at 3625 Prospect Avenue, a distance of about a mile and a quarter directly ahead and in the same direction in which the truck was headed. In giving this direction to the deceased, Kaiser said: "You put the truck away and I will see you in the morning." This conversation took place at about 5:00 P. M. Thereafter Kaiser saw the decedent drive the truck east on Prospect Avenue. There is no evidence of the activities of the deceased from the time he left Kaiser at 5:00 P. M. driving the truck in an easterly direction on Prospect Avenue until 7:30 P. M. of the same evening at which time while driving the said truck east on Woodland Avenue in the vicinity of E. 28th Street, a point over a mile to the south of where he was directed to go, he was involved in a collision in which he was fatally injured. The deceased died at Charity Hospital on June 7, 1942. From the stipulation of fact it is clear that the deceased was not employed as a truck driver. His job was to assist Kaiser. He was directed to drive the truck on the night in question under the circumstances above set forth.

The sole question is whether or not plaintiff established by any degree of proof that the deceased came to his death as a result of and while acting within the scope and course of his employment. It is the contention of the appellee that because at 5 P. M. on the day in question the deceased was instructed to operate the truck to the garage by his employer, and that two and one-half hours later, at the time of the accident which caused his death he was in fact driving the said truck at a point far removed from the place he was directed to go, that the mere fact that he was still in possession of the truck raises a rebutable inference or presumption that at the time of the accident which caused his death, he was acting within the course and scope of his employment.

In support of such contention, the plaintiff cites the discussion under the title "Master and Servant" 26 O Jur 680; sec. 675; where it is said:

"The fact that one is in possession of the automobile of another, coupled with the additional fact that he is employed by the owner to drive and care for it form a chain of circumstantial evidence from which a jury is authorized to infer the further fact that the employee is using the machine upon the employer's business and is acting within the scope of his employment unless the evidence shows that he was not so engaged at the time on any business for his master, but was proceeding on business of his own."

It must be noticed that the rule as thus stated is bottomed on two facts: 1st, that the employee is found "in possession of his employer's vehicle" and 2nd, that he is "employed to drive and care for the same." An examination of the cases cited in support of this rule clearly develops the importance of these elements. In the case of **Coal Co. v Rivoux, 88 Oh St 18,** the coal company was sued for damages growing out of injuries sustained by the plaintiff through the claimed negligent operation of one of its automobiles by one of the employees of the company. The proof showed that the vehicle was in the possession of and being driven by such employee but the defendant claimed that he was not then acting in the course and scope of his employment. The plaintiff contended that the fact that such employee was in possession of the vehicle was evidence tending to establish the fact that he was acting within the course and scope of his employment and upon such showing the burden of showing he was not acting within the scope of his employment is upon the defendant.

The supreme court in reversing this holding said on page 25 of the opinion:

"Assuming that such a presumption did arise the burden so called would not require defendant to do more than introduce evidence sufficient to countervail this presumption—it was not required to overbalance or outweigh it. **Klunk v Hocking Valley Railway Co., 74 Oh St 125.** But did such a presumption arise from the facts established by plaintiff below? The ownership of the automobile was established and it was shown that Tribbey was operating the car at the time of the accident and that he was an employee of the company. Is it to be inferred from these facts that Tribbey was acting within the scope of his employment? It was conceded that he was an employee, but was there any evidence offered by plaintiff tending to prove that he was an employee or servant em-

ployed in connection with the particular instrument which caused the death of decedent? Not only was there no evidence in support of such a claim, but on the contrary it appears from the testimony of plaintiff's own witnesses that Tribbey was a cashier or bookkeeper in the office of the company and that the care, storage and repairs of the automobile were under the control of another employe—a traveling salesman, for whose sole use and purposes the same had been purchased.

Further, there was no evidence offered on the part of plaintiff, tending to prove that Tribbey was operating the automobile, at the time of the accident, with the knowledge, consent or authority of the company, or that he had ever so operated it. In addition to the cases cited by defendant in error, we have examined and considered a number of other 'automobile cases' and we find that in these cases at the time of the accident the automobile was in charge of a servant of the owner—a chauffeur in most instances—whose duty it was to operate the automobile and who was rightly in the possession and use of the same with the consent, knowledge and authority of the owner."

Paragraphs 2 and 3 of the syllabus hold:

"2. The facts that the automobile was owned by defendant, and that the same was negligently operated by an employe, do not make a prima facie case of negligence against the owner, unless it appears that the employe was driving the automobile with authority, express or implied, of the owner."

"3. A bookkeeper or cashier employed in the office of the company is not presumed from that fact alone to have the implied authority to use or operate an automobile purchased and owned by the company, for the use and purpose of a traveling salesman."

The rule as thus stated was followed in the case of **Hawkins v Wilkoff Co., 141 Oh St 139** at page 142 as follows:

"The general rule is that the law raises no presumption of agency. It is a matter to be proved; 2 Amer. Juris. 349, 442. Some courts, however, hold that proof of ownership of an instrumentality, such as the crane in this case, is sufficient to establish a prima facie case that a person operating it is in the owner's employ for that purpose and as such is, at a specific time, acting within the scope of his authority.

This court, however, is committed to the proposition that proof of ownership alone is not sufficient to raise such an inference of fact. To raise an inference, it must be shown, in addition to such ownership, not only that the operator is an employee of the owner, but that he is employed generally in the business of his employer to operate such instrumentality. White Oak Coal Co. v Rivoux, Admrx., supra; Lima Ry. Co. v Little, supra; Sobolovitz v Lubric Oil Co., **107 Oh St 204**, 140 N. E. 634 * * * * *."

Also, in the case of **Smith v Baskins**, 59 Oh Ap 298, at page 300 the court says:

"* * * * * The evidence that the employee was engaged in delivering groceries distinguishes this case from **White Oak Coal Co., v Rivoux, Admrx., 88 Oh St 18.**"

As was indicated above, the deceased was employed as a helper for Kaiser who was employed as a driller. Whether or not he would drive the truck on a particular day was dependent upon what he was told to do by his superior. On the day in question he was directed by Kaiser to drive him to 700 Prospect Avenue · after they had completed their day's work at the steel plant. Thereafter he was directed to drive the truck to the garage at 3625 Prospect Avenue about one mile and a quarter east of and on the same street where he left his foreman. Not one syllable of evidence appears in the record of his activities after Kaiser saw him start east on Prospect Avenue until 2½ hours later when he was involved in the collision at E. 28th and Woodland Avenue that caused his death.

Under such circumstances, that is, by the lapse of time and the wide departure from the instructions which he received with respect to putting the truck in the garage, there can be no inference from the deceased's possession of the truck that he was then acting within the scope of course of his employment.

There being no evidence in support of a necessary element of plaintiff's case, the judgment of the common pleas court is reversed and final judgment is entered for the appellant.

LIEGHLEY, J., concurs.
MORGAN, J., dissents.

MORGAN, J., (dissenting).

The facts in this case were stipulated by the parties on the rehearing before the Industrial Commission. In the stipulation, the parties agreed "that the only question at the present time is the question as to whether or not Frank Yaro Cherney came to his death in the course of and arising out of his employment."

The following are the controlling facts in this case as stipulated by the parties:

1. The decedent was an employee of The J. L. Harper Company which had its garage for storage of its trucks at 3625 Prospect Ave. in the City of Cleveland. It was the practice of the employees of J. L. Harper Company to report for the start of the day's work at the said garage, from which point the employees would drive out, or be driven out in a truck owned by The J. L. Harper Co.

2. On the day that decedent met his death, he and other employees had gone out to the job at the plant of the Otis Steel Company on Jennings Road, in the company's truck at about 8:00 A. M. One Jesse Kaiser, also an employe of J. L. Harper Co., was in charge of the operation of the job and the decedent Cherney worked under his supervision.

3. The work of the day was completed about 4:30 P. M. and both Kaiser and Cherney left the grounds of the Otis Steel Co., in the employer's truck with the decedent, Cherney, driving the truck.

4. Prior to this day, both Kaiser and Cherney would usually leave the Otis Steel plant at 4:30 P. M. and directly proceed to the garage on Prospect Ave. The usual route consisted in driving the truck to Independence Road; then north on Independence Road to Broadway; east on Broadway to E. 30th St; then north to Prospect Avenue and east on Prospect Avenue to the garage at 3625 Prospect Avenue where the truck would be left for the night.

5. On the day in question, instead of taking the usual direction, the decedent at the request of Kaiser, drove Kaiser to the downtown section of Cleveland known as 700 Prospect Avenue and arrived there at aproximately 5 P. M. The record is silent as to why Kaiser wanted to make this detour.

6. Kaiser got out of the truck and advised Cherney as follows: "You put the truck away and I will see you in the morning." Kaiser saw Cherney proceed in an easterly direction on Prospect Avenue and this was the last time that Kaiser saw Cherney until after the accident.

7. As to what the decedent did, or what route he took prior to the accident, the stipulation is silent. It states: "It is further stipulated by and between counsel that at the time of this stipulation no evidence is available as to the activities or whereabouts of the decedent from the time he left Kaiser to the time of the accident."

The accident occurred about 7:30 P. M. while the decedent was driving the truck in an easterly direction on Woodland Avenue in the vicinity of East 28th Street where the truck driven by decedent collided with another car. Cherney died four days later from the injuries he received in the accident.

The direct route from the point where Kaiser parted with Cherney at 5 P. M. was for the latter to proceed easterly on Prospect Avenue to the employer's garage. It is evident that the decedent did not follow this route. This, as stated, is all we know from the stipulated facts. No light is cast by the stipulation on whether or not the decedent departed from the direct route on some business of his employer or for his own purposes.

If the decedent departed from the direct route on business of his own, at all times it continued to be his duty to put an end to the deviation and to return the truck to the employer's garage. The direct route from the point of the accident to the garage was easterly to E. 30th St., north on E. 30th to Prospect, thence east to the gararge. The decedent at the time of the accident, therefore, was proceeding easterly toward E. 30th Street and was actually within two blocks of the place where Woodland Avenue intersects the usual route from the plant of the Otis Steel Co. to the employer's garage.

It is therefore clear that even if it be held that it is a proper inference from the stipulated evidence that the decedent after leaving Kaiser, departed from the direct route to the garage on his own business (in support of which inference there is no direct evidence in the record) the position at which the accident occurred and the direction the truck was going are wholly consistent with the view that the deviation, if any, had been terminated and that the decedent was not at the time proceeding on his own business but was engaged in returning the truck, as it was his duty to do, to the employer's garage.

The question whether or not the decedent, Cherney, at the time of the accident was acting in the course of his employment is the same question as would be presented if a person injured in the accident were attempting to hold the decedent's employer liable for the former's negligence on the principle of "respondeat superior."

It is well established in this state that where a person is employed by the owner to drive an automobile and it collides with another car, a jury is authorized to infer the further fact that the employe was using the machine upon the employer's business, and was acting within the scope of his employment in the absence of evidence showing the contrary to be true. (See **26 O Jur 680,** Sec. 675 on Master and Servant.)

The latest pronouncement of the Supreme Court on this point is to be found in **Hawkins v Wilkoff Co., 141 Oh St 139,** where the court said at page 145 (after referring to **White Oak Coal Co v Rivoux, Admrx, 88 Oh St 18** and **Sobolovitz v Lubric Oil Co., 107 Oh St 204):**

"When such essential facts as shown in the last two above cited cases are shown, an inference arises that in operating the instrumentality at any specific time, the operator is acting within the scope of his authority, and this stands as an item of evidence, subject to be counter-balanced or overthrown by other competent evidence. * * *. No such inference however, can arise until it is first shown that the person operating the instrumentality is in fact employed by the owner for that purpose."

It is conceded in this case that the decedent in operating the employer's truck was "employed by the owner for that purpose." That is, it was his duty and a part of his employment on that day to drive the truck to the employer's garage to be stored there until the following day. The position of the truck at the time of the collision, as well as the direction it was proceeding, was wholly consistent with the view that at the time of the collision the decedent was taking the most direct course from the point at which the accident occurred to the employer's garage and that accordingly the decedent met his death while, in the language of the stipulation, he was "in the course of and arising out of his employment."

The present case is one, in my opinion, where the rule stated by the supreme court in **Industrial Commission v Pora, 100 Oh St 218,** at page 223, should be applied, namely, that the Workmen's Compensation Law "commands a liberal construction in favor of the employee."

There is a question whether two of the Judges of this Court have the power, in view of the provisions of **Article XXIV, Sec. 6 of the Constitution of Ohio,** to reverse the judgment of the Common Pleas Court in this case. Without passing upon this question, I wish firmly to register my dissent from the majority opinion in this case.